UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NICOLE MARIE WATSON,<br><br>　　　　　Defendant. | 4:18-CR-40018-KES<br><br>RESPONSE TO MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)(i) |

The United States, by and through the undersigned Assistant United States Attorney, Eric Kelderman, files this response opposing the defendant's Motion for Compassionate Release (Docket 51) at this time.

## FACTUAL BACKGROUND

Nicole Watson was sentenced on March 25, 2019, to 180 months' custody for conspiracy to distribute a controlled substance. Docket 47. Her release date is scheduled for January 4, 2030. https://www.bop.gov/inmateloc/ (last accessed December 6, 2023) (enter BOP register number 10240-173). Watson is 39 years old. She is housed at the Federal Correctional Institution in Waseca, Minnesota (FCI Waseca). https://www.bop.gov/locations/institutions/was/. FCI Waseca currently has 0 COVID-19 inmate cases and 0 staff positive cases, 0 inmates and 0 staff members have passed away due to COVID-19, and the facility has had 320 inmates and 61 staff members who have recovered from COVID-19. https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed December 6, 2023).

Watson submitted an administrative request for compassionate release to the warden at FCI Waseca on October 23, 2023. *See* Docket 51 at 3, 6. The warden denied her request, explaining she had not provided necessary documentation to explain the current caregiver's situation or how it would meet the applicable criteria for a reduction in sentence. Docket 51 at 3. Thus, she has exhausted her administrative remedies, as required under 18 U.S.C. § 3582(c)(1)(A).

In her motion, Watson does not cite any medical conditions that qualify as extraordinary and compelling reasons for release and prevent her from providing self-care. *See* Docket 51. Instead, she claims family needs her to be home because her "children and their current living situation is in the process of being terminated due to the guardians no longer wanting to deal with [her] children's mental and behavioral health issues." *Id.* at 1. She further alleges her mother's health is in decline. *Ibid.* She asserts "compassionate release will allow [her] to not only care for [her] children but for [her] mother as well." *Ibid.*

Watson's medical records indicate she has a severe stimulant-related disorder, anxiety disorder, obesity, and other less-serious health conditions. Docket 52 at 36-38. Her records also show she has a history of having COVID-19. *Id.* at 38.

**ARGUMENT**

I.  **REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED.**

   A.  **Applicable Law.**

"The court has detailed the governing law and the analysis it uses when

confronted with a compassionate release motion in multiple, previous reported and unreported decisions." *United States v. Hoff*, No. 4:18-CR-40136-02-KES, 2021 WL 1564425, at *3 (D.S.D. Apr. 21, 2021) (citing *United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020). As explained in *Hoff*, the United States Sentencing Commission limited "extraordinary and compelling reasons" to four categories. U.S.S.G. § 1B1.13, cmt. n.1(A)-(C). The categories related to a "defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances." *Hoff*, No. 4:18-CR-40136-02-KES, 2021 WL 1564425, at *3. "A fifth catch-all category also exists for an 'extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)' as determined by the Director of the Bureau of Prisons." *Id.* (quoting U.S.S.G. § 1B1.13, cmt. n.1(D)).

In addition to the previously utilized "governing law and analysis" the Court has employed, as listed in the cases cited above, *see Hoff*, 2021 WL 1564425, at *3, the United States Sentencing Commission recently proposed amendments to the Sentencing Guidelines, which took effect on November 1, 2023. Those amendments expanded the list of "extraordinary and compelling reasons" that may warrant sentence reductions under § 3582(c)(1)(A). These amendments expanded the qualifying conditions to include: "a medical condition

that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," as well as a defendant's "personal health risk factors and custodial status" that increase the risk of "severe medical complications or death" resulting from an "ongoing outbreak of infectious disease" or a declared public health emergency at a specific facility.  *Id.* § 1B1.13(b)(1)(C)-(D).  The amended Guidelines expanded the "family circumstances" class of "extraordinary and compelling circumstances" to include the following: death or incapacitation of the caregiver of a defendant's adult child who is incapable of self-care due to a disability or mental condition, *id.* § 1B1.13(b)(3)(A); incapacitation of a defendant's parent making the defendant the only available caregiver for that parent, *id.* § 1B1.13(b)(3)(C); and when a defendant shows "circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or individual whose relationship with the defendant is similar in kind to that of an immediate family," *id.* § 1B1.13(b)(3)(D).  The amendments added two new categories of "extraordinary and compelling reasons" for "victims of abuse" in BOP custody, and for defendants with "unusually long sentences."  *Id.* § 1B1.13(b)(4), (6).

  The limitations set in § 3582(c)(1)(A) contemplate sentence reductions for specific individuals, not a widespread release of inmates and modification of lawful sentences to deal with a pandemic.  The Eighth Circuit has held "the COVID-19 pandemic is not an extraordinary and compelling circumstance to warrant a sentence reduction in [this] case." *United States v. Marcussen*, 15

F.4th 855, 858 (8th Cir. 2021) (quoting *United States v. Gater*, 857 Fed. Appx. 259, 261 (8th Cir. 2021) (unpublished) (affirming denial when defendant "did not have any major medical issues and the mere possibility of contracting COVID-19 in prison, alone, . . . does not meet the extraordinary or compelling standard to warrant a sentence reduction")). Max's non-specific claims are nothing more than complaints about a general threat posed to the entire prison population.

The CDC has concluded people with some conditions are at increased risk of severe illness from COVID-19, including: cancer, kidney and lung diseases, dementia/serious neurological conditions, diabetes, serious heart conditions, an immunocompromised state, serious mental conditions, overweight and obesity, pregnancy, current or former smoking, stroke victims, transplant recipients, strokes, and substance abuse disorders, among others. *See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (updated May 11, 2023).

Finally, the statute contemplates reductions for specific individuals, not a widespread release of inmates and modification of sentences to deal with a pandemic. The Eighth Circuit has held that "the COVID-19 pandemic is not an extraordinary and compelling circumstance to warrant a sentence reduction[.]" *Marcussen*, 15 F.4th at 858. The statutory categories encompass specific serious conditions afflicting individuals, not generalized threats to the entire population.

### B.      Watson Has Not Met Her Burden Under § 1B1.13(b)(1), (b)(5).

Watson potentially has conditions contained in the CDC's list of conditions that could cause a person to become seriously ill if she contracts COVID-19— major depressive and anxiety disorders, as well as obesity. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed December 6, 2023). But Watson does not cite any condition as supporting her motion for sentence reduction.

Watson has not shown any conditions that are not treatable, that she is not being treated properly for them, or that they in some other way support a sentence reduction. Nothing in the record demonstrates Watson's ability "to provide self-care within the environment of a correctional facility" has been substantially diminished because of COVID-19. U.S.S.G. § 1B1.13 cmt. n.1(A); *see United States v. Korn*, 2020 WL 1808213 at *5 (W.D.N.Y. Apr. 9, 2020) (release not warranted when defendant can walk with cane, bathe, eat and perform activities of daily living). Watson has provided no evidence to show extraordinary or compelling medical reasons for release sufficient to warrant release under § 1B1.13(b)(1) or the catch-all category in subsection (b)(5).

Further, while Watson cites a Department of Justice Report about conditions at FCI Waseca and complains no corrective action has been taken to correct the conditions there, Docket 51-1 at 1-49, that complaint is not sufficient to constitute extraordinary and compelling reasons for release. General prison

conditions are insufficient to meet her burden. *United States v. Gater*, 857 Fed. Appx. 259, 261 (8th Cir. 2021) (unpublished). Watson's general concern about incarceration at FCI Waseca is understandable, but it does not form a reason for release. Thus, she has not met her burden to show extraordinary and compelling reasons based on her medical conditions or conditions of confinement warranting a sentence reduction under § 3582(c)(1)(A).

    **C.**    **Watson Cannot Satisfy § 1B1.13(b)(2), (b)(3), (b)(4), (b)(6).**

Watson's claims do not satisfy any of the categories listed in U.S.S.G. § 1B1.13(b)(2), (b)(4), or (b)(6) and relevant caselaw. Her age of 39 does not meet the requirement under subsection (b)(2). *See* U.S.S.G. § 1B1.13(b)(2). She has made no claim that she was abused while serving her BOP sentence. *See* U.S.S.G. § 1B1.13(b)(4) (providing that extraordinary or compelling reasons may exist for prisoner abused in BOP custody). And Watson has not shown that she either received an unusually long sentence, or that she has served at least 10 years, as required under subsection (b)(6). U.S.S.G. § 1B1.13(b)(6).

The only claims Watson explicitly makes are related to different family circumstances. But as explained below, Watson has not provided information to show family circumstances meeting the requirements of subsection (b)(3). *See* U.S.S.G. § 1B1.13(b)(3) (noting extraordinary or compelling reasons may be shown by death or incapacitation of caregiver of defendant's minor children, incapacitation of spouse or partner making defendant only available caregiver, or incapacitation of caregiver parent).

The United States does not contest the circumstances Watson outlines in

her motion. Specifically, she has shown the current caregivers of her minor children—a foster family—are unable to provide care for the minor children because, conceivably at least, they could at any time rescind their willingness to be foster parents. The foster mother has explained her husband travels some days each month, and when she is the sole caregiver for Watson's children, she has had to call police "because each of them has gotten physical with" her. Docket 51 at 2. She explains "[t]hey are both stronger, and I can no longer engage in strategies to protect myself (like go to my room and close the door to get a barrier between us). I have tried that, and they both have pushed right past it." *Ibid.* She states there is no other person they can think of to care for Watson's children. *Ibid.* She opines the children will end up in prison if Watson remains in prison, expressing belief Watson will "live up to her end of the bargain and be a positively contributing member of society." *See id.* at 2, 9 (showing last page of letter separated from first page in filed documents).

For her part, Watson notes she has completed "a substantial amount of rehabilitation and am respectfully request[ing] a term of supervised release with special conditions that would include mental health counseling to provide 'after-care' to ensure my success in re-integrating into society and raising my children." *Id.* at 5. She claims he has "a valid home plan and intend to acquire vital and necessary mental health counseling and gainful employment." *Ibid.*

Watson claims her mother is "increasingly sick" and in the hospital due to rapid weight loss and a lack of strength. *Id.* at 1, 5. She alleges her mother is unable to care for herself. *Ibid.* Watson has attached to her motion medical

records for her mother, but she has not cited the specific portions of those records that would support a conclusion her mother is unable to care for herself, or what condition causes the incapacity. *See* Docket 51 at 72-115.

The most important consideration is that Watson bears the burden to show all potential caregivers for her children are incapacitated, and that she is the only available caregiver. She has presented scant evidence that she is the only available caregiver for her children. *See United States v. Tucker*, No. 3:14-CR-0367-B-84, 2021 WL 977100, at *2 (N.D. Tex. Mar. 15, 2021) (observing that "courts consider whether . . . a person other than the defendant is available to serve as a caretaker of a minor or incapacitated family member"). Without evidence a defendant "is the only available caregiver of his spouse or that his spouse is the only available caregiver of his children, the Court cannot determine whether [the defendant's] family circumstances give rise to extraordinary and compelling reasons for his release." *Tucker*, 2021 WL 977100, at *2; *see United States v. Hill*, No. 5:18-CR-50022, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020) (concluding that even assuming defendant's wife was incapacitated, court "would still need additional, credible evidence as to the lack of alternative caregivers in order to make a definitive finding that [the defendant] is the only available caregiver"); *United States v. Nguyen*, No. CR 16-340 (MJD/BRT), 2021 WL 4952838, at *1 (D. Minn. Oct. 25, 2021) (denying compassionate release in part because defendant did not show the allegedly incapacitated person was sole caregiver of his children"); *United States v. Thomas*, 2020 WL 6737872, at *3 (N.D. Tex. Nov. 16, 2020) (same). Here, Watson has provided some evidence

supporting her claim that her children have no other caregiver. *See* Docket 51 at 1-5, 9, 72-115. But she has failed to demonstrate no other individuals are available.

Watson has not demonstrated she is the only available caregiver because she has not shown she would be a *suitable* caregiver for the children, that she would be eligible to care for the children, or that she would have an appropriate residence for them to live in. *See United States v. Rodriguez*, No. 3:21-CR-00334-DCN-4, 2023 WL 5720148, at *4 (D. Idaho Sept. 5, 2023) (denying release for defendant who, inter alia, was a drug addict and had no appropriate residence for children). Watson has not provided evidence to show she would be eligible to have custody of her children, what her custodial rights over them might be, or her overall suitability to function as their primary caregiver.

One court in this district has addressed a motion from an inmate claiming he was needed to care for his children. *See United States v. Seeking Land*, No. 3:15-CR-30081-RAL, Docket 66 (D.S.D. Nov. 18, 2021). The court there cited a BOP Program Statement outlining factors in evaluating the best interest of a child. *Id.* (quoting BOP Program Statement 5050.50 at 8-9, https://perma.cc/98YN-KRQX (updated Jan. 17, 2019)). Those factors include, inter alia, evaluation of whether the inmate has committed violent acts, whether drugs or other dangerous substances were present in the home, the amount of contact the parent had with the child, whether there is evidence of child abuse or neglect, whether there exists documentation of the inmate's parenting skills or termination of parental rights, and the amount of programming the inmate

was involved in while incarcerated. *Ibid.* The court cited the defendant's absence from the child during most of the child's life, as well as the defendant's three felonies. *Id.* at 9. The court noted it could not determine the inmate's fitness as a parent or whether it would be in the child's best interest to have the inmate serve as caregiver, but noted its skepticism given the defendant's record. *Ibid.*

In the present case, Watson has not made a sufficient showing, supported by evidence or even specific details, to meet several of the factors outlined. As explained below, Watson was heavily involved in drug distribution and use of alcohol and drugs throughout her adult life and up to the time of her arrest. She began using alcohol and smoking marijuana at 16 years old. PSR ¶¶ 98-99. She smoked marijuana from age 14 on, except when pregnant. PSR ¶ 99. She began using methamphetamine at age 18 or 19, using heavily into adulthood except, according to her, when she was pregnant. PSR ¶ 100. She "was never able to stay away from the drug permanently." *Ibid.* Watson has mental health problems, with diagnoses for depression, anxiety, and amphetamine dependence. PSR ¶¶ 96-97. She has failed at outpatient treatment. PSR ¶ 101. She has been discharged before completing rehabilitation due to relapse on another occasion. PSR ¶ 102. She successfully completed a different treatment program in 2012, PSR ¶ 103, but she has committed another felony and has been involved in at least two alleged drug crimes since that time, *see* PSR ¶¶ 64, 75. Finally, she has failed to complete Community Benefit Inventory for Social Accountability (CBISA) three times over the course of two to three years. PSR ¶ 104. Based on this information, Watson has shown a history of failing to address

her drug and alcohol problems for any sustained period.

As more fully set forth in the PSR, Watson was involved in a large drug trafficking conspiracy that included dealing from her home, along with personal use of methamphetamine. PSR ¶¶ 5-23. Watson's criminal history shows her children were present when she committed an alleged 2017 drug offense. PSR ¶ 75. Her children were present at her residence where she was making drug sales involved in a 2007 felony drug conviction. PSR ¶ 59. She admitted she sold drugs to both support her methamphetamine addiction, as well as to support her children. PSR ¶ 26. These things provide a strong indication that, regardless of her best intentions with her children, Watson's longstanding habit is to become involved in using and selling drugs, regardless of her children's best interests.

While she claims she has sought and received treatment and education while in prison, including drug treatment, Watson's records show she still needs education on a number of matters, including mental health, family/parenting, antisocial peers, and substance abuse. Docket 52 at 78-80. But even with the completion of these programs and treatment, her release would not be appropriate at this point. While Watson has taken some positive steps of completing some treatment and classes while in prison, *see id.*, even assuming she is able to assume custody of her children, her release would require extensive supervision, a release plan with strict accountability provisions, and measurable standards of success or failure. But Watson does not provide information about any positive parenting skills she has developed while in or out of custody. Her

previous repeated choices to involve her children in her criminal activities, along with her history of failed treatment, recidivism, and criminal activity requires more than just a promise from her that she will do better. The possibility of a detailed and appropriate release plan, vetted by the United States Probation Office, could address many shortcomings in her current request. But based on what Watson has submitted to this point, the record provides insufficient support for any claim that Watson should be released to care for her children, nor that the best interests of her children would be advanced by her release, even though due to incapacitation or unavailability of all other caregivers.

Finally, the United States acknowledges Watson presents a strong case for the need for compassionate release. But unfortunately, the circumstances of her offense and history present a stronger case for continued detention. Until a feasible plan is devised and approved, Watson is not a viable candidate for release under any circumstances, and she should remain detained until then.

### D. Section 3553(a) Factors Weigh Against Defendant's Release.

The Court also must take into consideration the 18 U.S.C. § 3553(a) sentencing factors consistently with applicable policy statements from by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (noting compassionate release is discretionary and may be refused after weighing § 3553(a) sentencing factors); *Marcussen*, 15 F.4th at 859 (affirming application of § 3553 factors in denying release).

The § 3553(a) factors also do not support a sentence reduction. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

Watson's request for sentence reduction should be denied because the § 3553(a) factors weigh against release. As shown above, her PSR shows Watson was part of a large conspiracy, and she was involved in extensive trafficking herself. PSR ¶¶ 5-23. She was responsible for distributing at least 7.65 kilograms of the methamphetamine on numerous occasions. *Ibid.*

The sentence the Court imposed was at the mandatory minimum. PSR ¶ 120. But it was also one month less than the low end of the Guidelines range applicable to her offense. PSR ¶ 121. This sentence reflected the seriousness of the offense. Requiring her to serve the full sentence imposed promotes respect for the law, provides just punishment, and protects the public from her.

In sum, the § 3553(a) factors weigh against a sentence reduction. She still has approximately 6 years and 1 month of her sentence left to serve. Accordingly, considering the totality of circumstances under § 3553, this Court should deny the motion.

Dated and electronically filed December 7, 2023.

                                              ALISON J. RAMSDELL
                                              United States Attorney

*/s/ Eric Kelderman*

_____
ERIC KELDERMAN
Assistant United States Attorney
515 9th Street, Room 201
Rapid City, SD 57701
Telephone: (605) 342-7822
Email: eric.kelderman@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on December 7, 2023, a true and correct copy of the foregoing was served upon the defendant by placing the same in first-class U.S. mail, postage prepaid, and addressed as follows:

Nicole Watson
#10240-173
FCI Waseca
Inmate Mail/Parcels
P.O. Box 1731
Waseca, MN 56093

                                              */s/ Eric Kelderman*

_____
ERIC KELDERMAN
Assistant United States Attorney